UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


TIMOTHY C. VISAGE,

                          Plaintiff,

vs.                                                    Case No. 3:16-cv-1077-J-34PDB

R.E. WOODALL, et al.,

                          Defendants.

_____

## ORDER

### I. Status

        Plaintiff Timothy C. Visage initiated this action on August 24, 2016, by filing a pro

se Civil Rights Complaint (Doc. 1; Complaint) naming four individuals: R.E. Woodall, C.

Fisher, C.O.I. Jones, and E. Crews. In his Complaint, which is verified under penalty of

perjury, Visage asserts Defendants were deliberately indifferent to "unsafe prison

conditions," in violation of the Eighth and Fourteenth Amendments. As relief, Visage

seeks compensatory and punitive damages and a declaration that Defendants violated

his constitutional rights. Before the Court are the following motions: (1) Visage's Motion

to Compel Florida Department of Corrections (FDOC) Warden to permit Visage to

correspond with an inmate at a different correctional institution (Doc. 31; Motion to

Correspond); (2) Visage's Motion for Summary Judgment (Doc. 37; Plaintiff's Motion for

Summary Judgment), supported by forty-six exhibits (Pl. MSJ Ex.); and (3) Defendants'

Motion for Summary Judgment (Doc. 41; Defendants' Motion for Summary Judgment).

The Defendants provide the following exhibits in support of their Motion for Summary

Judgment: (1) excerpts of Visage's deposition (Doc. 41-1; Def. MSJ Ex. A); (2) Fischer's Declaration (Doc. 41-2; Def. MSJ Ex. B); (3) Jones' Declaration (Doc. 41-3; Def. MSJ Ex. C); (4) Woodall's Declaration (Doc. 41-4; Def. MSJ Ex. D); and (5) Crews' Declaration (Doc. 41-5; Def. MSJ Ex. E). Defendants have responded to Visage's Motion to Correspond (Doc. 33; Motion to Correspond Response) and to Visage's Motion for Summary Judgment (Doc. 45; Defendants' Response), and Visage has responded to Defendants' Motion for Summary Judgment (Doc. 43; Plaintiff's Response). Accordingly, the motions are ripe for this Court's review.

## II. Factual Background[1]

Visage's claims arise out of an incident that occurred in the library at Columbia Correctional Institution (CCI) on March 4, 2016. See Complaint at 6.[2] According to Visage, he approached an open window[3] in a common area in the library to get some fresh air. He then rested his right hand on the windowsill, apparently bracing himself during a coughing fit,[4] and the window slammed shut with such force that his right index finger was

---

[1] Because this case is before the Court on cross-motions for summary judgment, the Court will, when addressing the merits of either party's motion, view the facts presented in the light most favorable to the party opposing summary judgment. The Court will so note its perspective when appropriate. The facts recited in this section are either undisputed, or any disagreement has been indicated. See T-Mobile S. LLC v. City of Jacksonville, Fla., 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008).

[2] See Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014) (citations omitted) ("The factual assertions that [Plaintiff] made in his amended complaint should have been given the same weight as an affidavit, because [Plaintiff] verified his complaint with an unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations.").

[3] Defendants contend the window was closed at the time Visage approached it, and he opened it himself, contributing to his own injury. See Def. MSJ Ex. B at 3; Def. MSJ Ex. D at 3. For reasons addressed later, whether the window was open or closed is not a material fact relevant to the Court's consideration of the parties' motions for summary judgment.

[4] Visage states that, at the time of the incident, he was fifty-years-old, had a chronic illness, and was suffering from an acute respiratory infection. See Complaint at 7. Visage does not assert a claim for failure to treat the medical condition that he claims prompted him to approach the window in the library.

nearly amputated. Visage asserts that all sliding windows at CCI have been altered by the removal of a "spring loaded locking device [safety spring(s)] that safely holds open the sliding windows in the library and the rest of the compound." <u>Id.</u> at 15. According to Visage, the removal of the safety springs from all windows, including the window that caused his injury, creates an unsafe condition. <u>Id.</u> at 13, 15. Without the safety springs in place, Visage maintains, the windows do not remain in the open position without being "rigged" in some way. <u>See</u> Def. MSJ Ex. A at 15-16; Pl. MSJ Ex. 30 (Doc. 37-33).[5]

Defendants do not dispute that the windows at CCI have been permanently altered. <u>See</u> Defendants' Motion for Summary Judgment at 4. Defendant Crews avers in his declaration that "the spring from the support mechanism for the library windows was removed by a former warden of [CCI] over twenty years ago because inmates were removing the[] springs . . . to construct into weapons." <u>See</u> Def. MSJ Ex. E at 2. Moreover, on March 17, 2016, after Visage's injury, Captain Jason Reeder completed an injury report in which he recognized a "safety hazard [was] created by [the windows] being broken." <u>See</u> Def. MSJ Ex. D at 5. Captain Reeder noted that signs were posted by the windows, which read, "stay out of the windows." <u>Id.</u> An inspector with the Environmental Health and Safety Office (EHSO) recommended, in a report dated March 22, 2016, that the window be repaired and that the staff provide "closer monitoring." <u>See</u> <u>id.</u> at 6. Importantly, none of the Defendants themselves were involved in the decision to permanently alter the windows.

---

[5] Page numbers reflect the pagination assigned by the Court's CM/ECF docketing system, which are found at the top of each page.

### III. Visage's Claims

Visage sues Woodall, Crews, and Jones for deliberate indifference, asserting they knew the window alteration posed an unreasonable risk of harm and failed to fix the window or warn of its danger. See Complaint at 15-16; Def. MSJ Ex. A at 15. His claims against Woodall, Crews, and Jones are premised on the positions Visage alleges they held at CCI on the day of the incident: Woodall, as the Assistant Warden for Operations,[6] Crews as the Maintenance and Construction Superintendent, and Jones as a correctional officer in charge of library security. See Complaint at 4-6. While not clearly articulated in his Complaint, Visage argues in his Motion for Summary Judgment Brief (Doc. 37-3; Plaintiff's Brief) that he also asserts a deliberate indifference claim against Jones and Fischer, the librarian, for their alleged delay in securing medical treatment after he reported his injury. See Plaintiff's Brief at 36, 41-42. See also Def. MSJ Ex. A at 14-15.

Defendants contend, both in their Motion for Summary Judgment and in their Response that Visage has not properly pled a claim for deliberate indifference to a serious medical need. See Defendants' Motion for Summary Judgment at 16; Defendants' Response at 10. Reading Visage's pro se Complaint liberally, as this Court must do, the Court finds that he has sufficiently pled facts to put Defendants Jones and Fischer on notice of a claim for deliberate indifference to a serious medical need. Visage asserts in his Complaint that, when he reported the injury, Fischer informed Visage that he had to wait for the return of the security officer, Jones. See Complaint at 9. Upon Jones' return to the library, Visage states, Jones instructed Fischer to "handle the emergency," and Jones then left. Id. at 10. Visage asserts that ten minutes elapsed, and he still had not

---

[6] According to Woodall, he did not hold this position on the day of the incident. See Def. MSJ. Ex. D at 1.

received medical assistance. When Jones returned to the library for the second time, she contacted the necessary medical and security personnel and Visage was taken to the medical unit for treatment. Id. These allegations form the basis of his claim of deliberate indifference to a serious medical need.

Finally, Visage sues all Defendants for a violation of due process under the Fourteenth Amendment. See id. at 16.

### IV. Motion to Correspond

In his Motion to Correspond, Visage seeks an order compelling a non-party, the Warden of Union Correctional Institution (UCI), to permit him to correspond with an inmate (Rico Mitchell) housed at DeSoto Correctional Institution Annex. In a declaration Visage filed with his Motion to Correspond (Doc. 31-1; Motion to Correspond Dec.), he also seeks the issuance of a subpoena for inmate Mitchell "in preparation for summary judgment and [/] or trial." See Motion to Correspond Dec. at 2. In support of his Motion to Correspond, Visage provides the sworn affidavit of another inmate, Lonergan, (Doc. 31-3; Lonergan Aff.) who avers that inmate Mitchell sustained an injury similar to Visage's while Mitchell was housed at CCI. Lonergan states that Mitchell told Lonergan that "his finger was 'all but chopped off'" when an open bay dormitory window closed on his hand. See Lonergan Aff. at 1.

Visage also provides an Inmate Request form dated September 12, 2017 (Doc. 31-4; Inmate Request), in which he sought permission to correspond with inmate Mitchell. His request was denied "because of a disciplinary infraction." See Inmate Request at 1. According to Visage, the denial of his right to correspond with another inmate "violates his due process of obtaining relevant discovery matters." See Motion to Correspond at 3.

In Defendants' response to the Motion to Correspond, they argue that a non-party may not be compelled to act, Visage may seek discovery from the Defendants and may serve subpoenas in compliance with applicable Rules at his own cost, and Visage should follow prison procedures to receive the warden's permission to correspond with another inmate, as permitted under the Florida Administrative Code. See Motion to Correspond Response at 2.

Visage's Motion to Correspond is due to be denied. To the extent he seeks an order compelling a non-party to act, absent a subpoena properly served on that party, this Court may not do so. Furthermore, the prison official who responded to Visage's Inmate Request only temporarily denied his request because of "very recent disciplinary history/charges." See Inmate Request at 1. The official who responded specifically instructed Visage that he could "request consideration again in 6 months if [he] remain[ed] DR free." Id. Visage has provided no evidence, nor does he assert, that, at the expiration of the six-month period, he renewed his request to correspond with inmate Mitchell.[7]

To the extent Visage asserts that the relevant prison rule restricting his ability to communicate with other inmates violates due process, the Supreme Court has specifically held that restrictions limiting inmate-to-inmate correspondence do not offend due process principles if they are reasonably related to valid corrections goals. See Turner v. Safley, 482 U.S. 78, 91-92 (1987). Moreover, "because the 'problems of prisons in America are complex and intractable,' and because courts are particularly 'ill equipped' to deal with these problems, [courts] generally have deferred to the judgments of prison officials in

---

[7] A prison official responded to Visage's grievance on September 22, 2017. See Inmate Request at 1. Visage was permitted to renew his request to correspond with inmate Mitchell anytime on or after March 22, 2018.

upholding . . . regulations [including restrictions on inmate-to-inmate correspondence] against constitutional challenges." Shaw v. Murphy, 532 U.S. 223, 229 (2001) (citations omitted).

Visage's assertion that the denial of his Inmate Request hindered his discovery efforts is unavailing. Visage propounded discovery, and Defendants responded. Additionally, through the filing of a Motion to Compel (Doc. 29), Visage obtained additional information that he requested. See Order (Doc. 48). Moreover, Visage has submitted inmate Lonergan's affidavit, which addresses inmate Mitchell's incident. For the above-stated reasons, Visage's Motion to Correspond, including his generalized request that the Court subpoena inmate Mitchell, is due to be denied.

## V. Cross-Motions for Summary Judgment

### A. Summary Judgment Standard

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[8] An issue is genuine when the evidence is such that a reasonable jury could

---

[8] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

return a verdict in favor of the nonmovant. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (quoting <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." <u>Kesinger ex rel. Estate of Kesinger v. Herrington</u>, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. <u>See</u> <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995) (citing <u>Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994)).

---

<u>Id.</u> "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." <u>Campbell v. Shinseki</u>, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

When a court is presented with cross motions for summary judgment, the court must evaluate each motion separately to determine whether either party is entitled to the relief sought in their respective motions. In accordance with Rule 56, when evaluating the merits of each motion, the court must construe the facts in the light most favorable to the non-moving party. See 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720 (4th ed. 2018) ("The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.").

## B. Defendants' Motion for Summary Judgment

Defendants seek entry of summary judgment in their favor. In doing so, they assert that the Fourteenth Amendment due process clause is inapplicable to Visage's claims; Visage has failed to establish an Eighth Amendment violation; and they are entitled to Eleventh Amendment Immunity as well as qualified immunity. See Defendants' Motion for Summary Judgment at 1.

### i. Fourteenth Amendment Due Process

With respect to Visage's Fourteenth Amendment due process claim, Defendants argue that the due process clause is inapplicable because Visage's claim falls within the protections of the Eighth Amendment. See id. at 17-18. Visage's due process claim is somewhat confusing and inconsistently articulated. In his Complaint, Visage asserts that Defendants violated his "due process rights under the Fourteenth Amendment . . . by subjecting [him] to conditions that [posed] atypical and significant hardship." See Complaint at 14. In Plaintiff's Brief, Visage states that the Defendants "violated [his] 14th Amendment right to procedural due process by not notifying [him] of the dangers in utilizing the altered sliding windows." See Plaintiff's Brief at 7. Visage contends that the

Defendants established "a constitutionally inadequate state procedure for depriving [inmates] of a protected interest." <u>See</u> Plaintiff's Response at 74. Visage includes as an exhibit a provision of the Environmental Health and Safety Program (EHSP) (Doc. 43-47; EHSP Manual), which mandates that Department supervisors ensure the "requirements outlined in the . . . Manual" are followed, including protecting inmates from accidents and other preventable conditions. <u>See</u> EHSP Manual at 2.[9] Claiming that the windows, in their altered state, could not possibly have passed safety inspections, Visage concludes that "prison officials used their supervisory and policy making authority to establish a policy to defy the state of Florida's own procedure for any safety and [/] or fire regulations." <u>See</u> Plaintiff's Response at 79. Visage further asserts that the deprivation of his need for fresh air denied him due process. <u>Id.</u> at 80. In their response to Visage's Motion for Summary Judgment, Defendants assert that a building code violation does not support a constitutional violation. <u>See</u> Defendants' Response at 9.

The Court finds that Visage is not entitled to relief under the due process clause because the Eighth Amendment provides an explicit source of constitutional protection for his injury. <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989). <u>Accord</u> <u>Cty. of Sacramento v. Lewis</u>, 523 U.S. 833, 842 (1998) ("[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (quoting <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994)); <u>Edwards v. Gilbert</u>, 867 F.2d 1271, 1274 (11th Cir. 1989)

---

[9] Importantly, the EHSP provision Visage asserts Defendants violated does not confer upon inmates a private right of action or provide for procedures that FDOC officials must follow with respect to inmate injuries or accidents. The provision merely states that its goal "is to reduce the frequency and severity of accidents." <u>See</u> EHSP Manual at 2.

(internal citations omitted) (rejecting a substantive due process claim because it added nothing to plaintiff's case since he was entitled to protection under the Eighth Amendment). Visage's due process claim is presented as an alternative means of demonstrating that Defendants failed to protect him from an alleged known risk of harm that existed in the prison—the altered windows. Because the Eighth Amendment provides a source of constitutional protection for his injury and because Visage has asserted a deliberate indifference claim, the due process clause fails to provide a separate legal basis for Visage's claim.

Moreover, even if Defendants violated state law or safety protocols by permitting the windows to remain in an altered, potentially unsafe condition, Visage has failed to establish a due process violation.[10]

> In prison cases . . . the Supreme Court has been conspicuously reluctant to recognize state laws as creating rights protected by the federal constitution. The Court has recognized such rights only where the state has used mandatory language to specify procedures which must be used or findings which must be made before benefits are taken away or burdens are placed on individual prisoners.

Edwards, 867 F.2d at 1274. See also Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (citing Crocker v. Hakes, 616 F.2d 237, 239 n.2, 240 (5th Cir. 1980) ("[D]eprivation of a right secured by the Constitution and laws of the United States is a prerequisite to a

---

[10] The exhibits Visage offers to demonstrate Defendants Woodall and Crews failed to report the defective windows do not support even an inference that they violated any relevant procedures or safety protocols. For example, Visage offers a blank copy of the FDOC Weekly Environmental Health and Safety Inspection Report. Pl. MSJ Ex. 43 (Doc. 37-46). The report indicates a "department head" is responsible for its completion, and it only requires that windows be inspected from the exterior to ensure they are "clean and intact." And, as noted above in this Order, the EHSP provision Visage provides fails to establish that Defendants Woodall and Crews were in violation of its mandate to protect "inmates from accidents and other preventable conditions." See EHSP Manual at 2. To suggest Woodall and Crews are responsible for Visage's accident, under this argument, would be tantamount to making them insurers of the property, a standard not permissible even under negligence principles.

s[ection] 1983 action.")). Visage has not presented evidence that Defendants deprived him of a benefit or imposed a burden without providing him due process (a hearing). Thus, Defendants are entitled to entry of summary judgment in their favor as to Visage's due process claim.

## ii. Eighth Amendment Deliberate Indifference

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, not every injury that a prisoner suffers as a result of a prison condition necessarily equates to a constitutional violation. See Goodman v. Kimbrough, 718 F.3d 1325, 1333 (11th Cir. 2013). Only injuries that occur as a result of a prison official's deliberate indifference rise to the level of an Eighth Amendment violation. Farmer, 511 U.S. at 834.

> To survive summary judgment in a case alleging deliberate indifference, a plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (per curiam) (internal quotation marks omitted).

Goodman, 718 F.3d at 1331 (footnote omitted). The first element requires that a plaintiff show he was exposed to "conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. The Eleventh Circuit has explained that isolated incidents do not satisfy the "substantial risk" standard articulated in Farmer. See, e.g., Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga, 400 F.3d 1313, 1320 (11th Cir. 2005) ("[O]ccasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable.") (second alteration in original).

The second element, commonly referred to as the "subjective component" of a deliberate indifference claim, requires a plaintiff to demonstrate that the prison official subjectively was aware of a substantial risk of serious harm. Farmer, 511 U.S. at 828, 835-36. The subjective knowledge component of a deliberate indifference claim is a difficult standard for a plaintiff to satisfy: establishing mere negligence is not sufficient. Id. A prison official subjectively knows of a risk of harm to an inmate when he "disregards an excessive risk to [the] inmate's health or safety." Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

Thus, to establish an Eighth Amendment violation, an inmate must show a prison official "actually (subjectively) knows that an inmate is facing a substantial risk of serious harm, yet disregards that known risk by failing to respond to it in an (objectively) reasonable manner." Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 617 (11th Cir. 2007) (citing Farmer, 511 U.S. at 837, 844) (footnote omitted). "The known risk of injury must be a 'strong likelihood, rather than a mere possibility' before a guard's failure to act can constitute deliberate indifference." Brown v. Hughes, 894 F. 2d 1533, 1537 (11th Cir. 1990). See also Bowen v. Warden, Baldwin State Prison, 826 F.3d 1312, 1321 (11th Cir. 2016) ("[I]t is only a heightened degree of culpability that will satisfy the subjective knowledge component of the deliberate indifference standard, a requirement that is 'far more onerous than normal tort-based standards of conduct sounding in negligence.'").

### a. Claim Against Woodall, Crews, and Jones: Unsafe Prison Condition

As noted, Defendants concede that the window that caused Visage's injury was altered and potentially unsafe. See Def. MSJ Ex. E at 2. However, they assert that their

knowledge of the alteration alerted them at most to a "potential for injury," which is insufficient to support a deliberate indifference claim. See Defendants' Motion for Summary Judgment at 14-15. Specifically, Defendants state that Visage "cannot show that any of the Defendants were placed on notice that there was a strong likelihood of excessive risk of harm or safety" resulting from the window alteration. Id. at 17.

Importantly, the parties agree that none of the Defendants were present at the time of the incident.[11] However, the parties dispute whether a "warning" sign was posted near the window that caused Visage's injury and whether the window was open when Visage approached it. For purposes of addressing Defendants' Motion for Summary Judgment and construing the facts in the light most favorable to Visage, the Court will credit Visage's verified statements that there was no warning sign near the window, see Pl. MSJ Ex. 16 (Doc. 37-19) at 1,[12] and that the window was already open when he approached it, see Pl. MSJ Ex. 7 (Doc. 37-11) at 2.

Demonstrating that prison officials knew of a potentially unsafe prison condition, without more, is insufficient to satisfy the demanding deliberate indifference standard. For example, in the analogous context of inmate-on-inmate violence, alleging that an inmate is generally prone to violence is insufficient, without more, to establish an eighth amendment violation. See, e.g., Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003)

_____

[11] Only Defendant Fischer, the librarian, was present in the library at the time of the incident, though he was not within proximity to have witnessed it.

[12] Visage avers that no signs were posted near the window on the day of his accident, see Pl. MSJ Ex. 16 (Doc. 37-19), and even if they were, they did not warn of a danger. To the extent the signs posted simply cautioned inmates to "stay out of the windows," such a caution does not necessarily imply a risk of harm exists. However, whether a "warning" sign was posted that sufficiently warned of a danger is not material to the question of whether Defendants were deliberately indifferent to a substantial risk of serious harm. The Court assumes as true that Defendants knew of the alteration of the windows, and that such alteration presented a potential for injury. Even assuming these facts, though, Visage still must present evidence that the condition amounted to an objectively substantial risk of serious harm, which he has failed to do.

("[B]efore Defendants' awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [an inmate's] generally problematic nature."); <u>Oliver v. Harden</u>, 587 F. App'x 618, 620 (11th Cir. 2014) (per curiam) (holding the evidence insufficient to demonstrate prison guards had subjective knowledge of a "constant threat of violence" because the offending inmates had not been involved in prior incidents, there had been only five similar attacks over a two-year period, and plaintiff did not report being fearful); <u>McBride v. Rivers</u>, 170 F. App'x 648, 655 (11th Cir. 2006) (affirming summary judgment where the plaintiff did not identify a "specific prior incident, from which the defendant could infer that a substantial risk [of harm] existed").

Rather, to establish a jury question on deliberate indifference, a plaintiff must present evidence of a particularized threat of harm of which the defendants were subjectively aware. <u>Rodriguez</u>, 508 F.3d at 620-21. <u>See also</u> <u>Bugge v. Roberts</u>, 430 F. App'x 753, 759 (11th Cir. 2011) (finding a jury question as to whether the general prison environment posed a substantial risk of harm where the plaintiff submitted evidence that most inmates possessed shanks, gang violence was rampant, and officials failed to discipline inmates who possessed weapons) (citing <u>Hale v. Tallapoosa Cty.</u>, 50 F.3d 1579, 1583 (11th Cir. 1995) (holding the plaintiff demonstrated a question of fact by producing evidence that severe violence between inmates occurred regularly when the jail was overcrowded)).

Even when prison officials take action or impose policies that arguably can or do result in some risk of harm, a plaintiff asserting a deliberate indifference claim still must demonstrate that the risk is "substantial," not isolated or infrequent. <u>See, e.g.</u>, <u>Lakin v. Barnhart</u>, 758 F.3d 66, 70-71 (1st Cir. 2014) (Souter, J., sitting by designation). In <u>Lakin</u>,

the court affirmed summary judgment in favor of defendants on plaintiff's deliberate indifference claim stemming from padlock assaults at the prison. Id. at 67. The plaintiffs alleged the defendants knew that inmates used padlocks to assault other inmates yet continued to allow inmates to possess them. Id. at 69. The Lakin court held that "the summary judgment record described no ground on which a reasonable jury could conclude that inmates at the Prison faced a substantial risk of being assaulted with a padlock by their fellow inmates," even though padlock assaults occurred about two times per year. Id. at 71. Recognizing that the plaintiff presented evidence that the distribution of padlocks posed some risk to inmates, the court found the evidence did not reach the "substantial" threshold required by Farmer, noting that "not every risk carries an inherent threat at a substantial level." Id. at 72. See also Lara-Cazares v. Dep't of Corr., No. CV09-838-PK, 2010 WL 5648879, at *6 (D. Or. Nov. 9, 2010) (finding that the plaintiff failed to demonstrate an objectively serious risk of harm by the defendants' placement of meter boxes near an outdoor playing field because the meter boxes were painted red to make them stand out and no other inmates had been injured before).

Upon review of the record, the Court finds that Woodall, Crews, and Jones have presented sufficient evidence to demonstrate that there is no genuine issue of material fact with respect to Visage's deliberate indifference claim against them. Defendants have demonstrated that, while they were aware that the windows had been altered creating a potentially unsafe prison condition, that condition did not result in "rampant," or even occasional, injuries of which they were aware. Cf. Hale, 50 F.3d at 1583; Bugge, 430 F. App'x at 759. Woodall, Crews, and Jones have provided declarations in support of Defendants' Motion for Summary Judgment in which they all aver that "[o]ther than the

injury to Visage on March 4, 2016, [they] know of no other injury from an incident involving any window at [CCI]." See Def. MSJ Ex. C at 2; Def. MSJ Ex. D at 2; Def. MSJ Ex. E at 1. Moreover, in response to Visage's discovery request to Crews, which asked, "[h]ave you ever heard of any other injury to any staff members or inmates from one of these [sliding] windows?," see Pl. MSJ Ex. 12 (Doc. 37-16) at 5, Defendant Crews stated, "I have no prior knowledge of any person getting injured by the windows in question," see Doc. 49.[13] Thus, Defendants have come forward with evidence that the window condition did not result in an objectively substantial risk of serious harm of which any of them had knowledge.

Finding Defendants have carried their initial burden, the Court must determine whether Visage has presented evidence sufficient to demonstrate a genuine issue of fact to defeat entry of summary judgment. Despite the voluminous filings and numerous exhibits Visage has provided, the Court finds that he has failed to produce evidence suggesting or supporting an inference that an objectively substantial risk of serious harm existed at CCI, much less that any of the Defendants was subjectively aware of such a risk. Visage has presented evidence of only one prior injury (to inmate Mitchell) over the twenty-year period during which the prison windows had been maintained in an altered and potentially unsafe condition.[14] See Lonergan Aff. at 1. Thus, Visage's evidence simply

---

[13] Pursuant to this Court's Order on Visage's Motion to Compel (Doc. 48), Defendant Crews' response (Doc. 49) that he had "no prior knowledge of any person getting injured" encompassed the windows in the library and any other window at CCI. To the extent Visage attempts to premise Crews' liability on Crews' current position as supervisor of maintenance at UCI, he misunderstands the applicable legal standard. Not only did Visage's injury occur while he was housed at CCI, not at UCI, but the present building condition at a different institution has no relevance to what Defendants knew about the risk of harm at CCI prior to Visage's injury. See Pl. MSJ Ex. 34 (Doc. 37-37) at 2.

[14] Visage submitted numerous inmate affidavits to establish that the windows at FDOC prisons are presently maintained in an unsafe condition. See Pl. MSJ Exs. 1, 24, 25, 27, 28, 29, 30, 31. Notably, however, with

is insufficient to permit a rational trier of fact to conclude that the condition of the window posed a substantial risk of serious harm to him, or that he was "exposed to [a] constant threat." See Oliver, 587 F. App'x at 620. Even more, assuming as true that inmate Mitchell suffered an injury similar to Visage's, he points to no evidence that any of the Defendants knew of the injury to inmate Mitchell. Thus, he has not identified a "specific prior incident, from which the defendant[s] could infer that a substantial risk [of harm] existed." See McBride, 170 F. App'x at 655.

To the extent Woodall and Crews had an affirmative duty to ensure the safety of windows throughout the prison,[15] any such failure to do so would amount only to a "dereliction of duty," which equates to mere negligence, not deliberate indifference. See Goodman, 718 F.3d at 1332–33 (holding the plaintiff failed to present evidence of prison guards' subjective knowledge of a substantial risk of serious harm even though the plaintiff presented evidence that one guard left her post for extended periods of time, the guards failed to conduct required head count and cell check procedures, and the guards admitted that they disengaged an emergency call button in a nearby cell). See also Franco-Calzada v. United States, 375 F. App'x 217, 220 (3d Cir. 2010) (affirming

---

the exception of inmate Lonergan's report of inmate Mitchell's injury, not one of the inmates claims to have suffered or observed a physical injury caused by the windows.

[15] Visage provides an affidavit in support of his Motion for Summary Judgment that he inspected a window in the library at UCI on November 7, 2017, which had the "safety device intact with a screwed[-]on bracket to prevent it from being used as a weapon." He offers this affidavit, with a diagram he drew, to demonstrate a "simplistic" way to maintain the windows in a safe condition. See Pl. MSJ Ex. 17 (Doc. 37-20) at 1. Visage's suggestion that later, while at UCI, he discovered a way for the Department to achieve both goals—retaining the safety device and avoiding its use as a weapon—has no relevance to the parties' cross-motions. As noted, the parties agree that the windows were altered and potentially unsafe. Thus, whether an "easy fix" was available that arguably could have prevented Visage's injury has no bearing on the issue of whether the condition posed a substantial risk of serious harm to Visage or whether Defendants had subjective knowledge of such a risk of harm.

dismissal of the plaintiff's complaint because his allegations that the defendants failed to inspect and fix his bunk ladder amounted to "an ordinary lack of due care").

The Court finds the authority Defendants offer in support of their Motion for Summary Judgment to be persuasive and consistent with binding Eighth Amendment jurisprudence. See Howard v. Hedgpeth, No. 08cv00859, 2011 WL 386980, at *11 (E.D. Cal. Feb. 3, 2011); Kreidler v. Thomas, No. 2:07-CV-263-WKW[WO], 2009 WL 3624378, at *6 (M.D. Ala. Oct. 29, 2009). In Howard, the plaintiff alleged that the defendants were deliberately indifferent to a known dangerous condition—a piece of metal sticking out from a walk-in freezer. 2011 WL 386980, at *1, 2. The plaintiff demonstrated that the defendants knew of the unsafe condition, which had been reported for repairs at least twice. Id. at *9. The court granted summary judgment in favor of the defendants finding that their failure to correct the safety hazard amounted to negligence, not deliberate indifference. Id. at *11. Moreover, the court found significant that the condition had persisted for many months without prior incident despite the "daily use [of the freezer] by multiple kitchen workers." Id. See also Kreidler, 2009 WL 3624378, at *4, 6 (granting summary judgment in favor of the defendant, stating that "[t]he mere possibility [that the plaintiff] could be injured by a falling window is not enough to establish deliberate indifference," even though the plaintiff alleged the window lacked a safety lock).

For the reasons stated above, Defendants Woodall, Crews, and Jones are entitled to summary judgment in their favor because Visage has not presented evidence sufficient to demonstrate there is a genuine issue of material fact that the window condition posed an objectively substantial risk of serious harm of which Defendants had subjective knowledge.

**b. Claim Against Jones and Fischer: Delay in Medical Treatment**

In Defendants' Motion for Summary Judgment, Jones and Fischer assert that Visage has failed to substantiate a deliberate indifference claim against them because he has presented no evidence that the delay in obtaining medical treatment worsened his condition. <u>See</u> Defendants' Motion for Summary Judgment at 41. <u>See also</u> Defendants' Response at 10. Defendants do not dispute Visage's injury; what is in dispute is how long Visage had to wait to receive medical treatment and the reason for the delay.

A delay in medical treatment may constitute an Eighth Amendment violation "when it is tantamount to unnecessary and wanton infliction of pain." <u>Hill v. Dekalb Reg'l Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994) (internal citations and quotations omitted), <u>overruled in part on other grounds by</u> <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002). The question whether a delay in medical treatment amounts to an unnecessary and wanton infliction of pain requires a court to consider the delay in "the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay." <u>Id.</u> at 1188.

First, the record evidence affirmatively demonstrates that Defendant Jones did not act with deliberate indifference in response to Visage's injury. It is undisputed that Jones was not present at the time the incident occurred. <u>See</u> Complaint at 9; Pl. MSJ Ex. 15 (Doc. 37-18) at 4.[16] Visage's claim against Jones is premised on his contention that her absence shows that she abandoned her post, <u>see</u> <u>id.</u> at 10, resulting in an unnecessary

---

[16] Exhibit 15 is Jones' response to Visage's Interrogatories.

delay in medical treatment.[17] According to Visage, Jones abandoned her post twice: once before he was injured, and once again after Jones learned of his injury.

In support of Defendants' Motion for Summary Judgment, Jones provides a declaration in which she avers that on March 4, 2016, she was assigned to an area that included both the library and education buildings. See Def. MSJ Ex. C at 1. 3. According to Jones, at the time of Visage's injury, she was assisting in a different area of the building to which she was assigned. Id. Visage has provided no evidence to rebut Jones' declaration that she remained in the area to which she was assigned. Notably, the discovery documents Visage provides in support of his Motion for Summary Judgment directly contradict his bald conclusion that Jones abandoned her post. See Pl. MSJ Ex. 14 (Doc. 37-17); Pl. MSJ Ex. 15 (Doc. 37-18) at 6. For example, in her response to Visage's Request for Admissions, Jones denied "leav[ing her] post in the library . . . on March 4, 2016." See Pl. MSJ Ex. 14 ¶¶ 2, 4, 5. Similarly, in her response to Visage's Interrogatories, Jones stated that she "did not abandon [her] post on March 4, 2016." See Pl. MSJ Ex. 15 ¶ 16.

Importantly, Visage asserts Jones was deliberately indifferent the first time she abandoned her post, which was prior to his injury. Of course, Jones could not have been

---

[17] Visage also suggests in his Motion for Summary Judgment that Jones' absence at the time he experienced his "coughing fit" somehow contributed to his initial injury. According to Visage, when he started coughing, he looked around for Jones to receive assistance. See Plaintiff's Brief at 5. When he did not see her, he placed his left hand on the bookshelf and his right hand on the windowsill and then the "window crashed down." See id. Jones' absence, prior to Visage's injury, does not support a conclusion that she was deliberately indifferent to a serious medical need because none existed at the time. To the extent Visage suggests that his "coughing fit" was a serious medical need and Jones' absence contributed to or caused his injury, his argument is insufficient to support a constitutional violation. Visage has offered no evidence that Jones knew he was experiencing a coughing fit or had a need for assistance because of a respiratory condition; there is no evidence Jones had "abandoned" her post; and there is no causal connection between Jones' absence and Visage's injury.

deliberately indifferent in obtaining medical treatment for an injury that had not yet occurred and of which she had no knowledge. To the extent Visage bases his claim on the fact that Jones left the library again after she learned of Visage's injury, the evidence shows that she did not ignore Visage's need for medical attention. Rather, once Jones learned of the incident, she took immediate measures to ensure Visage could safely be escorted out of the library. In her declaration, which Visage offers no evidence to dispute, Jones states the following:

> On March 4, 2016, a teacher, Ms. Roundtree called on the building's intercom that security is needed to resolve an inmate altercation in a classroom. On the way to the classroom, I heard noises from the door that separates the libraries from the rest of the education building. I stopped by this library door, asked Mr. Fischer if he took care of Visage's issue, and then I also called the control room to report the need for an escort.

> At that point, Ms. Roundtree called for security again, so I went to Roundtree's classroom where I observed the altercation between two inmates was resolving.

> I then returned to the libraries, again heard noises from the library door, and entered the libraries. I observed Visage's injured hand, but could not observe the severity of the injury. At that point, wondering why security had not yet come, I went to [the] exterior library door that exits to the outside of the building, opened the door, and observed a security escort walking up to the building to address Visage's medical issue.

Def. MSJ Ex. C at 1-2.

Visage's evidence comports with Jones' accounting of events. For instance, Visage provides the affidavit of inmate Edwin Mann who was present in the library when Visage sustained his injury. See Pl. MSJ Ex. 1(B) (Doc. 37-5) at 3-4. According to inmate Mann, Fischer told Visage he had to wait until a guard returned, which prompted Visage to start kicking the library door. Inmate Mann confirms Jones' account that she entered

the library when she heard the banging noises from the door, and "[o]nce [Jones] saw Visage's finger, she told [Fischer] to call medical." See id. at 3. Inmate Mann also confirms that Jones left the library again, which prompted other inmates to start kicking on the door and yelling because Visage looked like he was going to faint. Id. at 4. After Jones returned to the library the second time, she "called medical on her radio [and] [a]pprox[imately] five (5) minutes later medical showed up." Id.

Additionally, Visage offers the affidavit of inmate Rivera, who states that he informed Jones of Visage's injury, and Jones "instructed the law library staff to go for medical."[18] See Pl. MSJ Ex. 32 (Doc. 37-35) at 1. Rivera avers that he "kicked on the . . . door" to get Jones' attention. Rivera states that, when Jones returned, she then summoned assistance herself. Id. Finally, Visage himself acknowledges in an Affidavit he provides in support of his Motion for Summary Judgment that after Jones called for medical assistance, officers came to escort him to medical within five minutes. See Pl. MSJ Ex. 40 (Doc. 37-43) at 3. Considering all the evidence, Visage has failed to present evidence that Jones acted with deliberate indifference once she learned of his need for medical attention. The evidence shows that Jones took steps to respond reasonably to Visage's injury. Jones' decision to delegate the emergency situation to Fischer amounts to a judgment call that the Court will not second-guess, especially given that Jones was responsible for dealing with a security issue in another part of the building at the same time. See Goodman, 718 F.3d at 1333.

Defendants have also met their initial burden in support of their Motion for Summary Judgment as to Visage's deliberate indifference claim against Fischer. In his

---

[18] Rivera does not identify Fischer by name in his affidavit. See Pl. MSJ Ex. 32 at 1. However, the Court presumes, based on all the evidence, that the "library staff" person he references is Defendant Fischer.

response to Visage's Request for Production, Fischer admits that he informed Visage to "wait" when Visage reported the injury to him. See Pl. MSJ Ex. 3 (Doc. 37-7) at 2. However, Fischer explains in his declaration that he informed Visage to wait because of Visage's status as a protective management inmate and the need for a security escort. Fischer, who was employed as a librarian at the time of Visage's injury, explains the relevant events as follows:

> At approximately 9:30 am . . . Visage approached me complaining about a medical emergency where, upon observation, his index fingers appeared twisted at a knuckle with no observable blood. . . . I inquired how the incident occurred, and Visage stated in response that "I was fu***** with" a window when it slammed down on his hand. . . .

> At that point, I called medical who stated to me that I needed to wait. I presumed that medical meant to wait because the part of the compound with the library needed to be cleared for a security escort for a protective management inmate, such as Visage.

> Security officers came to escort Visage approximately 5 to 15 minutes after Visage notified me of the injury.

Def. MSJ Ex. B at 1, 2.

The medical records reflect that Visage received treatment at 10:16 a.m. See Pl. MSJ Ex. 23 (Doc. 37-26) at 4. However, the parties' evidence conflicts as to the time that the incident occurred and, thus, the length of the delay. Fischer avers the time of incident was 9:30 a.m. See Def. MSJ Ex. B at 2, 3. On the other hand, the medical records Visage provides record the time of injury as 10:00 a.m. See Pl. MSJ Ex. 23 (Doc. 37-26) at 4. At least one inmate affidavit Visage provides in support of his Motion for Summary Judgment also puts the time of incident at 10:00 a.m. See Pl. MSJ Ex. 1 (Doc. 37-5) at 2. Visage himself testified in his deposition that the incident occurred at 10:00 a.m., though he

admitted he was unsure of the precise time. See Def. MSJ Ex. A at 10. Viewing the evidence in the light most favorable to Visage, if his injury occurred at 9:30 a.m., and he received treatment at 10:16 a.m., the delay was a maximum of forty-six minutes.[19]

When a court is asked to consider the "tolerable length of delay in providing medical attention," the nature of the inmate's injury or medical need and the reason for the delay are relevant. Harris v. Coweta Cty., 21 F.3d 388, 393-94 (11th Cir. 1994); see also Hill, 40 F.3d at 1188–89 ("[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay."). Without question, Visage suffered a serious injury and presented a serious medical need. A record from Memorial Hospital, where Visage was transferred on the day of the incident, notes that a "window fell on [his] finger[,] almost amputating it," and Visage was taken to surgery the same day. See Pl. MSJ Ex. 23(C) (Doc. 37-26) at 3. While it appears Visage may not have received medical care until, at an outer range, forty-six minutes after he reported his injury to Fischer, there is no evidence that the delay was attributable to Fischer.

Visage provides no evidence to counter Fischer's proffered reason for the delay in transporting him to medical—the need to clear the area for the transport of a close management inmate. In fact, in Plaintiff's Brief, Visage recognizes that guards must stop "all general compound movement" before "even one" protective custody inmate may be moved. See Plaintiff's Brief at 2-3. Visage further states that when protective

_____

[19] While the medical records Visage provides in support of Plaintiff's Motion for Summary Judgment reflect that he was treated within sixteen minutes of the incident (at 10:16 a.m.), this computation is based on a time of incident of 10:00 a.m. Pl. MSJ Ex. 23 (Doc. 37-26) at 4. However, the Court must construe the evidence in the light most favorable to Visage when considering Defendants' Motion for Summary Judgment. And, Fischer avers the time of incident was 9:30 a.m. See Def. MSJ Ex. B at 2, 3.

management inmates are in the library, before they are permitted to leave for their next destination, the "dorm [sergeant] will come to get us, stop[p]ing all general compound movement prior to our leaving." Id. at 3. Visage attempts to demonstrate that Fischer acted with deliberate indifference by providing the affidavits of inmates Mann and Rivera. Inmate Mann avers that when Visage reported the injury, Fischer "seemed not to care at all," and "appeared . . . as if he just got back on his computer." See Pl. MSJ Ex. 1 (Doc. 37-5) at 3-4. Inmate Rivera states that Jones "instructed [Fischer] to go for medical in which [he] never did." See Pl. MSJ Ex. 32 (Doc. 37-35) at 1. Rivera further states, "I then kicked on the . . . door in which Mrs. Jones came out again and stated 'I can't believe this person still didn't call for medical'." Id.

The inmate affidavits Visage provides are insufficient to demonstrate a genuine issue of material fact as to whether Fischer was deliberately indifferent to his serious medical need. Fischer avers that he called for medical assistance in response to Visage's injury. Inmate Mann's suggestion that Fischer "did not seem to care" does not provide evidence of the contrary. Whether Fischer appeared sympathetic to an injury does not rebut or cast doubt on his testimony that he called for medical attention or otherwise suggest that he failed to take action. As to inmate Rivera's affidavit, his conclusion that Fischer failed to "go for" medical is no more than an assumption he appears to reach because a security escort did not arrive immediately. Rivera's recognition of a delay confirms Fischer's acknowledgment that he told Visage to wait, and Fischer offers an explanation for the delay. Visage points to no evidence conflicting with Fischer's explanation for the delay, and he presents no evidence supporting even an inference that Fischer caused Visage to wait for the very purpose of inflicting pain.

Even if Fischer failed to "go for" medical, as inmate Rivera assumes, Jones called for a security escort at about the same time she instructed Fischer to call for medical. While the timeline is admittedly a bit unclear, in her declaration, Jones avers that she first learned of Visage's injury, she "asked Mr. Fischer if he took care of Visage's issue, and then [she] also called the control room to report the need for an escort." See Def. MSJ Ex. C at 1 (emphasis added). Upon her return to the library the second time, when security still had not arrived, Jones avers that she opened the door "and observed a security escort walking up to the building." Id. at 2. The security escort arrived either in response to Jones' call or to Fischer's, or both. Regardless, both Fischer and Jones aver they each summoned assistance, and they each recognize there was some delay in security's arrival. However, the evidence and reasonable inferences to be drawn therefrom, support only a conclusion that any delay was attributable to the circumstances and not to any intentional delay by Fischer.[20]

Upon review of the record and viewing the facts in the light most favorable to Visage, the Court concludes that Visage has failed to demonstrate the existence of a genuine issue of material fact sufficient to defeat summary judgment. Thus, Defendants' Motion for Summary Judgment is due to be granted with respect to Visage's claims against Defendants Jones and Fischer for deliberate indifference to his serious medical need.

---

[20] It is worth emphasizing that Fischer was a librarian. Fischer could not himself provide medical attention, nor could he personally provide a security escort for Visage, a protective management inmate.

### c. Supervisory Liability Against Woodall and Crews[21]

As to any claim based upon a theory of supervisory liability, Defendant Woodall asserts there is no causal connection between his official position and Visage's injury. See Defendants' Motion for Summary Judgment at 14. Woodall avers that he did not hold the position of Assistant Warden for Operations on the day Visage was injured. See Def. MSJ Ex. D at 1. The record reflects that on the day of the incident, Woodall held the position of Assistant Warden of Programs. Id. In that position, he was not responsible for supervising the buildings and grounds. Id. at 2. Thus, even if, at one time, Woodall had an obligation to generally inspect the premises,[22] he did not have that obligation on or shortly before March 4, 2016. Visage has offered no evidence to dispute that Woodall was not acting as the Assistant Warden of Operations on March 4, 2016. Therefore, he is entitled to judgment in his favor on that ground alone.

Moreover, the evidence does not support a basis for supervisory liability against either Woodall or Crews. The United States Court of Appeals for the Eleventh Circuit has stated:

---

[21] Defendants state that Visage asserts a claim for supervisory liability against both Woodall and Crews, see Defendants' Motion for Summary Judgment at 2, and they move for summary judgment accordingly, id. at 14. Visage does not plead a supervisory liability claim against Crews in his Complaint, and he arguably does not assert such a theory against Woodall either. See Complaint at 15. In his deposition, Visage testified that his claim against Crews is based on his role as a "supervisor" who "knows these windows," and who allowed the windows to be maintained in the altered condition. See Def. MSJ Ex. A at 15. In his Motion for Summary Judgment, Visage clarifies that he seeks to hold Defendant Woodall liable on a theory of supervisory liability because he knew of a "widespread history of abuse"—the dangerous condition of the windows throughout the prison—and failed to correct the "abuse" by directing the repair of the windows. See Plaintiff's Motion for Summary Judgment at 16-17. While Visage's claims are somewhat difficult to decipher, in an abundance of caution, to the extent he attempts to assert a claim against Woodall and Crews based upon a theory of supervisory liability, the Court will address it.

[22] Woodall avers in his declaration that, even as the Assistant Warden for Operations, his duties required him only to visually inspect the buildings, not to conduct detailed inspections. See Def. MSJ Ex. D (Doc. 41-4) at 1.

> "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez, 325 F.3d at 1234 (internal quotation marks and citation omitted).[23] "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).
>
> "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" Cottone, 326 F.3d at 1360 (citation omitted).[24] "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. A plaintiff can also establish the necessary causal connection by showing "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," Gonzalez, 325 F.3d at 1235, or that a supervisor's "custom or policy . . . resulted in deliberate indifference to constitutional rights," Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991).

Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008) (overruled on other grounds as recognized by Randall v. Scott, 610 F.3d at 701 (11th Cir. 2010) (rejecting the application of a heightened pleading standard for § 1983 cases involving qualified immunity)); see also Keith v. DeKalb Cty., Ga., 749 F.3d 1034, 1047-48 (11th Cir. 2014). In sum,

> To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the

---

[23] Gonzalez v. Reno, 325 F.3d 1228 (11th Cir. 2003).

[24] Cottone v. Jenne, 326 F.3d 1352 (11th Cir. 2003).

> violation of his constitutional rights,[25] (2) the existence of a
> custom or policy that resulted in deliberate indifference to the
> plaintiff's constitutional rights,[26] (3) facts supporting an
> inference that the supervisor directed the unlawful action or
> knowingly failed to prevent it,[27] or (4) a history of widespread
> abuse that put the supervisor on notice of an alleged
> deprivation that he then failed to correct. See id. at 1328–29
> (listing factors in context of summary judgment).[28] A
> supervisor cannot be held liable under § 1983 for mere
> negligence in the training or supervision of his employees.
> Greason v. Kemp, 891 F.2d 829, 836–37 (11th Cir. 1990).

Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (per curiam).

Viewing the evidence in the light most favorable to Visage and drawing reasonable inferences in his favor, the Court finds that Visage has failed to create an issue of fact on the question of whether Defendants Woodall and Crews were personally involved in, or otherwise causally connected to, any alleged violations of his federal statutory or constitutional rights. Importantly, Visage does not assert that either Woodall or Crews was individually responsible for or involved in the decision to remove the safety springs from the library windows. Visage also presents no evidence that either Woodall or Crews adopted a policy that resulted in a substantial risk of serious harm. See id. ("[A] single incident does not support an inference of . . . a policy.").

---

[25] See Goebert v. Lee Cty., 510 F.3d 1312, 1327 (11th Cir. 2007) ("Causation, of course, can be shown by personal participation in the constitutional violation.")

[26] See Goebert, 510 F.3d at 1332 ("Our decisions establish that supervisory liability for deliberate indifference based on the implementation of a facially constitutional policy requires the plaintiff to show that the defendant had actual or constructive notice of a flagrant, persistent pattern of violations.").

[27] See Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008) ("Douglas's complaint alleges that his family informed [Assistant Warden] Yates of ongoing misconduct by Yates's subordinates and Yates failed to stop the misconduct. These allegations allow a reasonable inference that Yates knew that the subordinates would continue to engage in unconstitutional misconduct but failed to stop them from doing so.").

[28] West v. Tillman, 496 F.3d 1321 (11th Cir. 2007).

Additionally, Defendants argue that Visage has failed to present evidence of a "widespread history of abuse" necessary to meet the exacting standard for supervisory liability. See Defendants' Motion for Summary Judgment at 14. Visage contends that he establishes supervisory liability because the evidence shows that the windows at CCI had been altered, and Defendants Woodall and Crews knew of the alteration. Thus, according to Visage, he has demonstrated a "widespread history of abuse." See Plaintiff's Response at 9. As noted, the parties do not dispute that the windows were altered. However, knowledge of a widespread condition is not synonymous with knowledge of widespread abuse or danger. Even if the condition of the windows posed a potential for harm that could properly be categorized as "abuse," Visage has demonstrated that only one other inmate injury had resulted from the condition of the windows at CCI over the course of many years. See Lonergan Aff. at 1. As such, he has simply failed to present any evidence suggesting that the potentially unsafe condition of the windows resulted in a danger that was "obvious, flagrant, [or] rampant." See Keith, 749 F.3d at 1048. One instance of a prior similar injury over a twenty-year period does not come close to the rigorous standard required to demonstrate supervisory liability premised on knowledge of a widespread history of abuse. See id. (holding that a prior similar instance of inmate violence resulting in death was an "isolated incident" and not "evidence of widespread and flagrant abuse sufficient to alert [the defendant] to a substantial risk of serious harm," even though the defendant knew of the prior incident); see also  Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014) (holding four instances of inmate-on-inmate assaults in a "back hallway" where no guard was permanently posted did not constitute evidence of a substantial risk of serious harm sufficient to hold a supervisory official liable for an inmate assault).

Thus, Woodall and Crews are entitled to entry of summary judgment with respect to Visage's claim against them in their supervisory capacity. Because the Court finds that Defendants have carried their burden with respect to Visage's claims for deliberate indifference and supervisory liability against Defendants Woodall, Crews, Jones, and Fischer and because Visage has failed to demonstrate a genuine issue of material fact as to all claims, Defendants' Motion for Summary Judgment is due to be granted.[29]

## C. Visage's Motion for Summary Judgment

Visage seeks entry of judgment in his favor, asserting that he has demonstrated Defendants Woodall, Crews, and Jones were deliberately indifferent "to a prison condition, that did expose [him] to unreasonable risk of serious harm and did cause [him] serious injury," and that Defendants Jones and Fischer were deliberately indifferent "to a serious medical need by delaying access to treatment . . . caus[ing] [him] unnecessary and wanton infliction of pain." See Plaintiff's Motion for Summary Judgment at 2. Because the Court has found that Defendants are entitled to judgment in their favor, Plaintiff's Motion for Summary Judgment as to the claims against them necessarily must fail.

Therefore, it is now

**ORDERED**:

1.    Visage's Motion to Compel FDOC Warden to permit him to correspond with another inmate (Doc. 31) is **DENIED**.

2.    Visage's Motion for Summary Judgment (Doc. 37) is **DENIED**.

3.    Defendants' Motion for Summary Judgment (Doc. 41) is **GRANTED**.

---

[29] Because the Court finds that Defendants are entitled to summary judgment on the substantive claims, the Court declines to address Defendants' remaining arguments—qualified immunity and Eleventh Amendment Immunity.

4.      The Clerk is directed to enter judgment in favor of Defendants Woodall,

Crews, Jones, and Fischer, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of October, 2018.

MARCIA MORALES HOWARD
United States District Judge

Jax-6
c:      Timothy Visage
        Counsel of Record